IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF PUERTO RICO

| | |
|---|---|
| PUERTO RICO PORTS AUTHORITY;<br>MAPFRE PRAICO INSURANCE COMPANY;<br><br>    Plaintiffs<br><br>    v.<br><br>[1]    THE P/V NORWEGIAN EPIC, her hull, engines, equipment, gear, tackle, appurtenances, etc. IN REM;<br>[2]    NORWEGIAN EPIC, LTD;<br>[3]    NCL Bahamas Ltd.;<br>[4]    the tug BETH M. McALLISTER, her hull, engines, equipment, gear, tackle, appurtenances, etc. IN REM;<br>[5]    the tug DOROTHY McALLISTER, her hull, engines, equipment, gear, tackle, appurtenances, etc. IN REM;<br>[6]    McALLISTER TOWING AND TRANSPORTATION COMPANY, INC.;<br>[7]    McALLISTER BROTHERS LLC<br>[8]    SAN JUAN BAY PILOTS CORPORATION;<br>[9]    CAPT. CARLOS RAMOS;<br><br>    Defendants. | CIVIL No. 21-cv-01056<br><br><br>ABOUT:<br><br><br>DAMAGES |

**COMPLAINT**

**TO THE HONORABLE COURT:**

    **COME NOW** the above captioned plaintiffs, through the undersigned attorneys, and complaining of the defendants, respectfully **STATE, ALLEGE and PRAY:**

    **I.    JURISDICTION AND VENUE**

    1.    This Honorable Court has jurisdiction over the instant action pursuant to the provisions of 28 U.S.C. § 1333 in that this is a maritime or admiralty claim within the meaning of Rule 9 (h) of the Federal Rules of Civil Procedure.

COMPLAINT
Civil No.

2. Venue is proper with this Honorable Court pursuant to the provisions of 28 U.S.C. § 1391 as the facts which serve as base for plaintiffs' causes of action arose within the District of Puerto Rico.

## II. THE PARTIES

4. Plaintiffs restate the allegations contained in the preceding paragraphs 1 and 2 of this Complaint which are incorporated by reference as if fully set forth at length herein.

5. At all times material to this action plaintiff the **PUERTO RICO PORTS AUTHORITY** (hereinafter, the **'PRPA'**) was, and still is, a public corporation created by virtue of Act No. 125 of April 7, 1942, 23 L.P.R.A. §331 et seq, as amended, with capacity to sue.

6. At all times material to this action plaintiff **MAPFRE PRAICO INSURANCE COMPANY** (hereinafter, **'MAPFRE'**) was and still is, a for profit corporation duly organized and existing under and by virtue of the laws of the Commonwealth of Puerto Rico, engaged in the business of insurance, with authority to conduct its business, and had issued and maintained in full force and effect an insurance policy in favor of the PRPA providing insurance coverage for the claim which is the subject of this action.

7. Plaintiffs bring this action on their own behalf and on behalf of all other parties who may be or may become interested in the captioned claim as their respective interests may ultimately appear.

8. All conditions precedent required of plaintiffs and all other parties hereto, as their respective interests may ultimately appear, have been performed.

9. At all times material the **P/V NORWEGIAN EPIC** (hereinafter, the **'EPIC'**) was a steel hull passenger cruise vessel flagged in the Bahamas and operating in the Western

COMPLAINT
Civil No.

Caribbean during the winter cruising season with a length of 1,080 ft (329.2 m), a draft of 29.6 ft (9.02 m), a beam/width 133.3 ft (40.64 m) and tonnage of 155,873 GT ITC. The vessel had 6 diesel engine-driven generators providing propulsion and electrical power and was propelled by two fixed-pitch propellers, each driven by a 32,184-hp electric (shaft) motor, with four 3,017-hp tunnel bow thrusters and two 4,023-hp tunnel stern thrusters.

10. At all times material the tug **BETH M. McALLISTER** was an ocean-going twin 'Z Drive' tug with an overall length of 102 feet with two (2) Caterpillar 3512 diesel engines rated at 3,000 horsepower.

11. At all times material the tug **DOROTHY McALLISTER** was an ocean going twin 'Z Drive' tug with an overall length of 102 feet with two (2) Caterpillar 3516B diesel engines rated at 4,000 horsepower.

12. Upon information and belief, at all material times to this action co-defendant **NORWEGIAN EPIC, LTD** was and still is a limited liability company wholly owned by Norwegian Cruise Line Holdings Ltd, organized, and existing under and by virtue of the laws of Bermuda and was the owner of the defendant EPIC.

13. Upon information and belief, at all material times to this action co-defendant **NCL Bahamas Ltd.** was and still is a limited liability company wholly owned by Norwegian Cruise Line Holdings Ltd, organized, and existing under and by virtue of the laws of Bermuda and was the operator of the defendant EPIC.

14. At all material times to this action, co-defendant **McALLISTER TOWING AND TRANSPORTATION COMPANY, INC.** ("McAllister Towing") was, and still is, a for profit corporation organized and existing under and by virtue of the laws of the State of Delaware

3

COMPLAINT
Civil No.

and authorized to do business within the Commonwealth of Puerto Rico, engaged in the business of operating and providing, among other services, assisting tugs for ship docking and general harbor towing within the bay of San Juan.

15. Upon information and belief, at all material times to this action co-defendant McAllister Towing was the owner and/or operator of the defendant tugs Beth M. McAllister and Dorothy McAllister, then providing service in the San Juan bay area.

16. At all material times to this action, co-defendant **McALLISTER BROTHERS LLC** ("McAllister Bros") was, and still is, a for profit corporation organized and existing under and by virtue of the laws of the State of Delaware and authorized to do business within the Commonwealth of Puerto Rico, engaged in the business of operating and providing, among other services, assisting tugs for ship docking and general harbor towing within the bay of San Juan.

17. At all material times to this action, co-defendant **SAN JUAN BAY PILOTS CORPORATION** was, and still is, a not-for-profit corporation organized and existing under and by virtue of the laws of the Commonwealth of Puerto Rico, engaged, among other things, in the business of providing piloting services at the port of San Juan, and assigning pilotage services for the port of San Juan.

18. At all material times to this action, co-defendant **Capt. Carlos Ramos** ("Capt. Ramos") was, and upon information and belief still is, a harbor pilot providing services in the San Juan Bay area who provided piloting services to the EPIC and is jointly and severally liable to the Plaintiffs for the damages claimed herein.

4

### III. FACTS COMMON TO ALL CAUSES OF ACTIONS

19. Plaintiffs restate and reallege the allegations contained in the preceding paragraphs 1 through 18 of this Complaint which are incorporated by reference as if fully set forth at length herein.

20. At all times material plaintiff PRPA owned and operated Pier 3 of the San Juan Cruise Port (**'Pier 3'**), located in the San Juan Bay area, in San Juan, Puerto Rico, with an approximate length of 1,102 feet and consisting of a combination of a solid pier and two mooring dolphins connected to the solid pier by metal walkways or "catwalks."

21. On February 12, 2019, while docking, during daylight hours at Pier 3 East, the EPIC's port bow contacted two of the pier's mooring dolphins (the **'Allision'**) resulting in substantial damage to the mooring dolphins and connecting catwalks as more fully described hereinafter.

22. There is no dispute regarding the facts averred in the preceding paragraph 25 of this Complaint.

23. At the time of the Allision the ship assist tugs Beth M. McAllister and Dorothy McAllister were providing docking support to the EPIC during its mooring operations.

24. On or about February 10, 2019, while *en route* to Tortola, British Virgin Islands, the EPIC suffered an initial failure to the electric motor driving its port propeller, resulting in a fifty percent power loss.

25. The foregoing notwithstanding, the EPIC continued its regularly scheduled itinerary.

COMPLAINT
Civil No.

26. On February 11, 2019, a day before the Allision, the electric motor driving its port propellor suffered a second casualty, rendering it inoperable and affecting the maneuverability of the vessel.

27. Upon the occurrence of the casualty referred to above, the EPIC's owners then directed the Master to bring the ship to the port of San Juan to better assess the damage and obtain technical assistance.

28. While transiting to San Juan, the EPIC's Master received an email from the vessel's agent detailing the cruise ship's berth on the East side of Pier 3.

29. On February 12, 2019, at about 5.5 miles from the entrance of San Juan harbor, San Juan harbor pilot defendant Capt. Ramos boarded the EPIC and went to the bridge.

30. Upon boarding the EPIC, it was then agreed by the Master of the EPIC and the pilot that the latter would conn [1] the vessel to a position near the berth and the master would take the conn for the final berthing operation.

31. The assistance of two tugs were ordered for docking and assisting in turning and berthing the EPIC, with a third tug available on standby.

32. With the Beth M. McAllister and the Dorothy McAllister tugs fast to the starboard bow and starboard quarter, respectively, of the EPIC, and in the course of the docking and berthing maneuvers, the EPIC's port bow allided with the first mooring dolphin of Pier 3 East which collapsed and sank into the harbor together with the connecting catwalk.

33. A short time later, the EPIC then struck the mooring dolphin that was closer to shore, which also collapsed into the harbor with its connecting catwalk.

---

[1] The term 'conn' as used herein is a nautical term meaning to conduct or direct the steering or movement of a ship.

COMPLAINT
Civil No.

34. The ship then continued its docking evolution without further mishap and was all fast to the pier at 1814 hrs.

35. The strikes to the dolphins left two indentations to the hull of the EPIC above the waterline that were each about 6 feet 4 inches long, 20 inches high, and 4 - 6 inches deep.

36. At all times material to the Allision the EPIC was under the command and control of the defendant EPIC's Master and the San Juan Pilot as well as the staff captain, watch officer, lookout, and/or helmsman of the EPIC, all of whom were also on the bridge to assist in the docking evolution and docking operations.

37. Following the above described Allision, an investigation was conducted by the National Transportation Safety Board (the "NTSB") and a Marine Accident Brief was issued on January 29, 2020, under Case No. DCA19FM016 (the "NTSB Report").

38. The facts averred in the preceding paragraphs 24 thru 37 of this Complaint are included in the NTSB Report and are part of its findings.

39. The Allision occurred through no fault on the part of the Plaintiffs.

40. On January 15, 2020, the Steamship Mutual as insurer and on behalf of NCL (Bahamas) Ltd. as operators of the P/V NORWEGIAN EPIC, on behalf of NORWEGIAN EPIC, Ltd. as owners of the vessel, and on behalf of the P/V NORWEGIAN EPIC, In Rem, issued a Letter of Undertaking in consideration of Plaintiffs' refraining from the arrest, attachment or otherwise seizure of the EPIC, and agreed thereby and became bound to pay and satisfy any final decree or judgment rendered, or settlement entered into with its approval, in connection with the allision and damages subject of this Complaint, in an amount not to exceed the sum of Twenty Two Million Dollars (USD$22,000,000).

41. Any and all applicable statutes of limitations were timely tolled as to defendants the P/V NORWEGIAN EPIC, the NORWEGIAN EPIC, Ltd., NCL Bahamas Ltd. and MCALLISTER TOWING AND TRANSPORTATION COMPANY, INC. by virtue of a Tolling Agreement entered into by the parties dated January 15, 2020.

42. Any and all applicable statutes of limitations were timely tolled as to defendants San Juan Bay Pilots Corporation and Capt. Carlos Ramos by virtue of tolling notices dated January 23 and February 7, 2020, respectively.

43. Any and all applicable statutes of limitations were timely tolled as to defendants McAllister by virtue of extrajudicial notice of claim and reservation of rights dated February 7, 2020.

## IV. CAUSES OF ACTION AND DAMAGES

44. Plaintiffs restate and reallege the allegations contained in the preceding paragraphs 1 through 43 of this Complaint which are incorporated by reference as if fully set forth at length herein.

45. The Allision and the damages resulting therefrom complained of in this Complaint were caused by the combined joint negligence of the defendants consisting, among others, in the inadequate performance, lack of communication and/or coordination between the EPIC, its Master and staff, the San Juan Bay Pilot and the assisting tugs, their failure to maintain situational awareness of Pier 3 East face proximity to the EPIC's heading and distance, which lack of coordination and communication continued throughout the docking evolution, as well as in the poor and negligent execution of the docking maneuver

COMPLAINT
Civil No.

among other negligent actions, all of which resulted in the totally avoidable allision and the damages claimed herein.

46. The accident and the damages complained of in this Complaint were caused by the joint negligence of the defendants.

47. All of the defendants are jointly liable to the Plaintiffs for the damages claimed in accordance with the applicable maritime law.

48. By reason of the premises, plaintiff PRPA sustained damage to the mooring dolphins and connecting catwalks which damages are estimated at present in the approximate amount of USD$9 Million Dollars, of which amount insurers and/or reinsurers of the PRPA have paid to date the amount of USD$1,372,650 (One Million Three Hundred and Seventy Two Thousand Six Hundred and Fifty United States Dollars) and are liable to the PRPA in accordance with the terms and conditions of the insurance policies issued.

49. In addition to the property damage, plaintiff PRPA has suffered the loss of use of the facilities as well as business interruption and incurred extra expenses in an as yet undetermined amount, including but not limited to the deductible amounts under the applicable policy.

50. Pursuant to the aforesaid, Plaintiffs are entitled to recover directly from defendants and their underwriters for all liabilities of their respective insured defendants as herein set forth.

**WHEREFORE,** it is respectfully prayed that judgment be entered in favor of Plaintiffs and against the defendants, jointly and severally, granting the Complaint, with an award of costs, expenses and attorneys' fees, and that Plaintiffs may have such other and further relief

COMPLAINT
Civil No.

as the Court may deem just and proper and the justice of the cause may require under the premises.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 3rd day of February, 2021.



**BBH LLC**
Attorney for Plaintiffs
P. O. Box 9023472
San Juan, PR 00902-3472
Tel:     (787) 721-0190
Fax:    (787) 724-5305
E-mail :  *ehestres@bbh-law.com*

By :    s/*Eugene F. Hestres Vélez*
            **EUGENE F. HESTRES VÉLEZ**
            **USDC No. 121310**

**EFHV/**