IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF PUERTO RICO

IN ADMIRALTY

CASE NO. 21-cv-01056-RAM

NCL (BAHAMAS) LTD. d/b/a
NORWEGIAN CRUISE LINE,
a Bermuda Company,

       Plaintiff

       v.

[1] MCALLISTER TOWING AND TRANSPORTATION
    COMPANY, INC.; *in personam*
[2] MCALLISTER BROTHERS, LLC; *in personam*
[3] the tug BETH M. McALLISTER, her hull, engines,
    equipment, gear, tackle, appurtenances, etc. *in rem*;
[4] the tug DOROTHY M. McALLISTER, her hull, engines,
    equipment, gear, tackle, appurtenances, etc. *in rem*;
[5] SAN JUAN BAY PILOTS CORP., *in personam*
[6] CAPT. CARLOS RAMOS; *in personam*

       Defendants.

_____/

**FIRST AMENDED COMPLAINT**

     Plaintiffs, NCL (Bahamas) Ltd. d/b/a/ Norwegian Cruise Line and Norwegian Epic, Ltd.

("Plaintiff" or "NCL"), sues McAllister Towing and Transportation Company, Inc., McAllister

Brothers, LLC, the tug Beth M. McAllister, *in rem*, the tug Dorothy M. McAllister *in rem*, San

Juan Bay Pilots Corp., and Capt. Carlos Ramos for damages sustained to the *P/V Norwegian Epic*

("*Epic*") on or around February 12, 2019.

## INTRODUCTION

1.     This action arises out of an allision that occurred on February 12, 2019, upon the navigable waters of the United States within this judicial district, at approximately Pier 3, East of the port of San Juan bay area in Old San Juan, Puerto Rico.

## JURISDICTION AND VENUE

2.     The Court has subject matter jurisdiction over the instant action pursuant to 28 U.S.C. § 1333 because this is an admiralty and maritime claim within the meaning of Federal Rule of Civil Procedure 9(h) and the Supplemental Admiralty and Maritime Rules of the Federal Rules of Civil Procedure.

3.     Venue is proper with this Court pursuant to 28 U.S.C. § 1391 as the facts which serve as the basis for NCL's claims arose within the District of Puerto Rico, all defendants voluntarily conduct significant business in Puerto Rico and within this judicial district, and all *in rem* defendants can be found within this judicial district.

## PARTIES

4.     Plaintiff, NCL (Bahamas) Ltd., is a foreign corporation organized and existing under the laws of Bermuda and was and is the operator of the *Epic*. Plaintiff, Norwegian Epic. Ltd. is a foreign corporation organized and existing under the laws of Bermuda and was and is the owner of the *Epic*.

5.     Defendant, McAllister Towing and Trans. Co., Inc. ("McAllister Towing"), at all material times was and is a for profit corporation organized and existing under the laws of the State of Delaware and authorized to do business within the Commonwealth of Puerto Rico, engaged in the business of operating and providing, among other services, assisting tugs for ship docking and

general harbor towing within the bay of San Juan, and is jointly and severally liable to NCL for the damages claimed herein.

6.     Upon information and belief, McAllister Towing was the owner and/or operator of the defendant tugs, Beth M. McAllister and Dorothy McAllister which provided tug services in the San Juan bay area. Upon information and belief, McAllister Towing was and is the employer of the crew, persons, or entities working on the tugs and subject to its control so that McAllister Towing is vicariously liable for their acts and omissions.

7.     Defendant McAllister Brothers, LLC ("McAllister Bros") at all material times was and is a for profit corporation organized and existing under the laws of the State of Delaware and authorized to do business within the Commonwealth of Puerto Rico engaged in the business of operating and providing, among other services, assisting tugs for ship docking and general harbor towing within the bay of San Juan, and is jointly and severally liable to NCL for the damages claimed herein.

8.     *In rem* Defendant, the tug Beth M. McAllister (the "*Beth McAllister*"), including its tackle, apparel, etc., upon information and belief, was engaged in the tug assistance of the *Epic* and is or was owned and operated by either or both McAllister Towing and McAllister Bros and is or will be during the pendency of process within this district and within the jurisdiction of this Court, and is jointly and severally liable to NCL for the damages claimed herein.

9.     *In rem* Defendant, the tug Dorothy M. McAllister (the "*Dorothy McAllister*"), including its tackle, apparel, etc., upon information and belief, was engaged in the tug assistance of the *Epic* and is or was owned and operated by either or both McAllister Towing and McAllister Bros and is or will be during the pendency of process within this district and within the jurisdiction of this Court, and is jointly and severally liable to NCL for the damages claimed herein (McAllister

Towing, McAllister Bros, Beth McAllister, Dorothy McAllister will be referred collectively to as "McAllister Defendants")

10.     Defendant San Juan Bay Pilots Corporation ("San Juan Bay Pilots") at all material times was and is a not-for-profit corporation organized and existing under the laws of the Commonwealth of Puerto Rico and in the business of providing piloting services at the port of San Juan and assigning pilotage services for the port of San Juan. Upon information and belief, San Juan Bay Pilots was and is the employer of the pilot during the subject allision and the pilot was subject to its control such that San Juan Bay Pilots is vicariously liable for the pilot's acts and omissions.

11.     Defendant, Capt. Carlos Ramos ("Capt. Ramos"), at all material times was and is a harbor pilot providing services in the San Juan Bay area who provided piloting services to the Epic and is jointly and severally liable to NCL for the damages claimed herein (San Juan Bay Pilots and Capt. Ramos collectively referred to as "San Juan Bay Defendants").

### FACTS COMMON TO ALL CLAIMS

12.     On February 11, 2019, the Norwegian *Epic* lost propulsion on its port propeller while en route to Tortola, British Virgin Islands.

13.     As a result, the Master of the *Epic* diverted the vessel to the Port of San Juan.

14.     In order to assist in the docking of the *Epic*, which was without port side propulsion at the Port of San Juan, NCL ordered the assistance of tugs from McAllister Towing.

15.     The Puerto Rico Ports Authority ("PRPA"), at all material times was and is a for profit corporation existing under the laws of the Commonwealth of Puerto Rico, assigned the *Epic* to berth on the east side of Pier 3 in San Juan.

4

DocuSign Envelope ID: 15DB0E2E-2225-4216-9AC2-421CB22E4498

16.       On February 12, 2019, Defendant, Capt. Carlos Ramos, boarded the *Epic* and went to the bridge.

17.       Upon arrival at bridge, Defendant Capt. Ramos advised the master of the *Epic* that there were three tugs available to assist the vessel into the berth at Pier 3 East.

18.       The *Beth McAllister* and *Dorothy McAllister* made fast to sunken bits on the starboard bow and starboard quarter of the *Epic*, respectively, during the docking maneuvers.

19.       During the docking maneuvers on February 12, 2019, the *Epic*'s port side contacted two of Pier 3's mooring dolphins causing damage to the Pier and to the Epic.

20.       The impact to the dolphins caused damage to the hull of the Epic above the waterline that were each about 6 feet, 4 inches long, 20 inches high, and 4 – 6 inches deep.

21.       At all times material to the allision, the Epic was under the direction of Defendant, Capt. Carlos Ramos.

22.       NCL had relied on the tugs to respond to the proper commands and relied on the Defendant, Capt. Carlos Ramos, to provide proper commands in English and to have requisite local knowledge of the conditions.

23.       The allision occurred through no fault on the part of Plaintiff.

24.       All applicable statutes of limitations were timely tolled as to defendants San Juan Bay Pilots Corporation, Capt. Carlos Ramos, and McAllister by virtue of extrajudicial notices of claims and reservation of rights and/or tolling agreements.

### COUNT I – BREACH OF CONTRACT / WARRANTY OF WORKMANLIKE PERFORMANCE
### (*As to McAllister Defendants*)

25. NCL realleges the allegations in paragraphs 1 – 24 as if fully set forth herein.

DocuSign Envelope ID: 15DB0E2E-2225-4216-9AC2-424CB22F4498

26.     On or around February 11, 2019, NCL and McAllister Defendants entered into an agreement to provide sufficient tugs to assist the Epic into Pier 3 East at the Port of San Juan.

27.     The McAllister Defendants knew that the *Epic* was disabled in that it only had starboard side propulsion and was making a non-scheduled port call at the Port of San Juan due to the loss of port side propulsion.

28.     Inherent in the contract for tug services was a warranty to provide tug services in a workmanlike manner to assist the partially disabled *Epic* in safely docking, maneuvering, and berthing in the Port of San Juan in San Juan, Puerto Rico.

29.     As part of the agreement and warranty of workmanlike performance, McAllister Defendants were required to perform tug services in a workmanlike manner, to use proper diligence to ascertain the condition of the vessel and the weather for the tow vessels, to follow the commands it received from NCL and the Pilot, to provide competent and prudently skilled crew to navigate the tugs, to provide sufficient tugs with the necessary power to safely assist the *Epic* for the required maneuvers and to provide seaworthy tugs capable of assisting the partially disabled *Epic*.

30.     At all times material while the *Epic* was entering the Port of San Juan, before and during the allision the McAllister Defendants supplied assisting tugs to the vessel to assist in docking, turning, and entering the berth.

31.     McAllister Defendants, however, materially breached the agreement and warranty to provide tug services in a workmanlike manner by their:

   a.   Failure to hire, supervise, and/or train its employees and/or crew to provide non-negligent tug assist services in maneuvering, docking, and berthing the *Epic*;

   b.   Failure to ascertain and/or communicate the condition of the *Epic* and its own tugs' capabilities to all relevant personnel;

    c.   Failure to execute the commands given to them during the maneuver in a reasonable and workmanlike manner;

    d.   Failure to timely and properly execute evasive maneuvers per the orders given;

    e.   Failure to select, position, and provide proper vessels and equipment to execute the maneuver to complete the docking evolution of the *Epic*;

    f.   Failure to hire and properly train adequate and competent crew to execute the maneuver to avoid the allision;

    g.   Failure to provide proper tug assistance service given the special circumstances related to the partially disabled condition of the *Epic;*

    h.   Failure to maintain control and maintain course and speed requested while maneuvering, docking, and berthing the *Epic*;

    i.   Unseaworthiness of the *Beth M. McAllister* and the *Dorothy M. McAllister*;

    j.   Any other breaches, unseaworthiness, statutory violations, and other defaults that will be proven at trial in this matter.

32.    As a direct, foreseeable, and proximate result of McAllister Defendants breaches of the agreement and warranty of workmanlike services, including their failure to follow commands given, NCL suffered damages to its vessel in the amount of $192,668.25.

**WHEREFORE**, Plaintiff respectfully requests the Court to enter judgment against the McAllister Defendants for all damages resulting from their breaches as set forth above, for pre- and post-judgment interest, attorney's fees and costs, and any further relief this Court deems just and proper.

### COUNT II – NEGLIGENCE
### (*As to McAllister Defendants*)

33. NCL realleges the allegations in paragraphs 1 - 24 as if fully set forth herein.

34.    This count sounding in negligence is pleaded in the alternative to Count I as to McAllister Defendants.

7

35.     The allision and the damages resulting therefrom complained of in this Complaint were caused, in whole or in part, by the fault and negligence of the McAllister Defendants and San Juan Bay Pilots Defendants.

36.     McAllister Defendants owed NCL a duty, as tug master, to exercise reasonable care and maritime skill as prudent navigators employ – especially where, as here, the *Epic* was partially disabled.

37.     McAllister Defendants wantonly breached their duties and were negligent or otherwise at fault in causing the allision for the following, non-exclusive reasons:

k.  Failure to hire, supervise, and/or train its employees and/or crew to provide non-negligent tug assist services in maneuvering, docking, and berthing the *Epic*;

l.  Failure to ascertain and/or communicate the condition of the *Epic* and its own tugs' capabilities to all relevant personnel;

m.  Failure to execute the commands given to them during the maneuver in a reasonable and workmanlike manner;

n.  Failure to timely and properly execute evasive maneuvers per the orders given;

o.  Failure to select, position, and provide proper vessels and equipment to execute the maneuver to complete the docking evolution of the *Epic*;

p.  Failure to hire and properly train adequate and competent crew to execute the maneuver to avoid the allision;

q.  Failure to provide proper tug assistance service given the special circumstances related to the partially disabled condition of the *Epic;*

r.  Failure to provide sufficient tugs with the necessary power to safely assist the *Epic* for the required maneuvers;

s.  Failure to maintain control and maintain course and speed requested while maneuvering, docking, and berthing the *Epic*;

t.  Unseaworthiness of the *Beth McAllister* and the *Dorothy McAllister*;

u.  Any other acts of negligence, unseaworthiness, statutory violations, and other fault that will be proven at trial in this matter.

8

DocuSign Envelope ID: 15DB0E2E-2225-4216-9AC2-431CB22E4498

38.     The Allision of the *Epic* occurred while the tugs, *Beth and Dorothy McAllister*, assisted the *Epic* in the Port of San Juan in San Juan, Puerto Rico on February 12, 2019, resulting in damage was caused, in whole or in part, by the fault and negligence of the crew, operators, or owners of or by unseaworthiness of the towboats.

39.     As a direct, foreseeable, and proximate result McAllister Defendants negligent acts, including their failure to follow commands given in a reasonable and workmanlike manner, NCL suffered damages to its vessel in the amount of $192,668.25.

**WHEREFORE**, Plaintiff respectfully requests the Court to enter judgment in favor of Plaintiff and against the McAllister Defendants, jointly and severally with an award of costs, expenses and attorneys' fees, and that Plaintiff may have such other and further relief as the Court may deem just and proper.

### COUNT III – NEGLIGENCE
#### (*As to San Juan Bay Pilot Defendants*)

40.     NCL realleges the allegations in paragraphs 1 - 24 as if fully set forth herein.

41.     San Juan Bay Pilot Defendants owed NCL a duty to exercise reasonable care as the compulsory pilot and employer of Capt. Carlos Ramos who was piloting and in command of the *Epic* at the material times before and during the allision.

42.      The San Juan Bay Pilot Defendants were negligent or otherwise at fault in causing the allision for the following, non-exclusive reasons:

    v.     Failure to hire, supervise, and/or train its employee pilots, including Capt. Ramos, to provide non-negligent piloting services in maneuvering, docking, and berthing the *Epic*;

    w.     Failure to ascertain and/or communicate the condition of the *Epic* and the capability of the tugs to all relevant personnel;

    x.     Failure to plan and communicate the maneuver to dock the *Epic*;

9

y.   Failure to communicate in English orders to the tugs;

z.   Failure to advise and assist the master properly with the docking maneuver so that the *Epic* could safely dock in Pier 3;

aa.  Failure to properly assess the conditions of the *Epic*, the tugs, the weather, and the vicinity of the area so as to ascertain whether it was safe to maneuver into the berth and/or advise that the vessel should wait until the conditions were more favorable;

bb.  Failure to advise NCL that under the weather and sea conditions at the time in conjunction with the condition of the *Epic* that NCL should have considered dropping anchor until more favorable conditions for docking existed;

cc.  Failure to have or maintain the requisite local knowledge of the port to complete the docking maneuver safely;

dd.  Failure to timely and properly command evasive maneuvers to avoid the Allision;

ee.  Failure to provide a properly skilled and competent pilot capable of safely navigating the Epic into Pier 3 given the conditions present at the time before and during the Allision;

ff.  Failure to take appropriate safety precautions and/or safety protocols to ensure *Epic* maintained the proper course and control under the circumstances;

gg.  Any other acts of negligence, unseaworthiness, statutory violations, and other fault that will be proven at trial in this matter.

43.   As a result of the negligence, unseaworthiness, statutory violations, and other fault of the San Juan Bay Pilot Defendants and the McAllister Defendants, all defendants became jointly and severally liable under the general maritime law of the United States to pay for Plaintiff NCL's damages for repairs to the Epic, the full costs of which have not been finally determined, but which currently total $192,668.25.

**WHEREFORE**, Plaintiff respectfully requests the Court to enter judgment in favor of Plaintiff and against the San Juan Bay Pilot Defendants, jointly and severally with an award of costs, expenses and attorneys' fees, and that Plaintiff may have such other and further relief as the Court may deem just and proper.

1

## COUNT IV - NEGLIGENCE PER SE
### (*As to San Juan Bay Pilot Defendants*)

44.     NCL realleges the allegations in paragraphs 1 - 24 as if fully set forth herein.

45.     San Juan Bay Pilot Defendants owed NCL a duty to exercise reasonable care under the circumstances as the compulsory pilot and the employer of Capt. Carlos Ramos who was piloting and in command of the *Epic* at the material times before and during the allision.

46.     The San Juan Bay Pilot Defendants failure to communicate orders in English to the tugs for all relevant parties to understand constituted violations of statutes and regulations that were specifically promulgated to protect and ensure the safety of navigating, docking, and berthing maneuvers at sea.

47.     Specifically, Rule 30 of the Pilotage Commission regulation titled "Transit Regulations in the Ports of Puerto Rico" provides that "[a]ll communications in a part using the VHF radio related to a vessel; during the entry, transit or departure of a vessel from a port; or during the maneuver of anchoring, mooring, docking, unmooring . . . including but not limited to communications between vessels, Pilots, Port Control, tugboats, escort tugboats . . . ***will be in the English language***." (emphasis added).

48.     Because the San Juan Bay Pilot Defendants violated this regulation requiring that it communicate orders in English, causing damages of a nature that the regulation was intended to prevent, their actions constituted negligence per se and thus invokes the Pennsylvania Rule and shifts the burden of proof to the San Juan Bay Pilot Defendants as to negligence or the absence of negligence.

49.     As a direct and proximate result of the San Juan Bay Pilot Defendants' negligence per se, NCL suffered damages for repairs to the Epic, the full costs of which have not been finally determined, but which currently total $192,668.25.

1

**WHEREFORE**, Plaintiff respectfully requests the Court to enter judgment in favor of Plaintiff and against the San Juan Bay Pilot Defendants, jointly and severally with an award of costs, expenses and attorneys' fees, and that Plaintiff may have such other and further relief as the Court may deem just and proper.

## COUNT V - NEGLIGENCE PER SE
### (*As to McAllister Defendants*)

50.     NCL realleges the allegations in paragraphs 1 - 24 as if fully set forth herein.

51.     The McAllister Defendants owed NCL a duty to exercise reasonable care under the circumstances as the tug assistance at the material times before and during the allision.

52.     The McAllister Defendants failure to communicate in English with the pilot during the berthing and docking maneuvers for all relevant parties to understand constituted violations of regulations that were specifically promulgated to protect and ensure the safety of navigating, docking, and berthing maneuvers at sea.

53.     Specifically, Rule 30 of the Pilotage Commission regulation titled "Transit Regulations in the Ports of Puerto Rico" provides that "[a]ll communications in a part using the VHF radio related to a vessel; during the entry, transit or departure of a vessel from a port; or during the maneuver of anchoring, mooring, docking, unmooring . . . including but not limited to communications between vessels, Pilots, Port Control, tugboats, escort tugboats . . . ***will be in the English language***." (emphasis added).

54.     Because the McAllister Defendants violated this regulation requiring that it communicate in English, causing damages of a nature that the regulation was intended to prevent, their actions constituted negligence per se and thus invokes the Pennsylvania Rule and shifts the burden of proof to the McAllister Defendants as to negligence or the absence of negligence.

1

55.     As a direct and proximate result of the McAllister Defendants' negligence per se, NCL suffered damages for repairs to the Epic, the full costs of which have not been finally determined, but which currently total $192,668.25.

**WHEREFORE**, Plaintiff respectfully requests the Court to enter judgment in favor of Plaintiff and against the McAllister Defendants, jointly and severally with an award of costs, expenses and attorneys' fees, and that Plaintiff may have such other and further relief as the Court may deem just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, NCL, respectfully requests the following *in rem* relief:

A.     A warrant for arrest issued against the tugs *Beth M. McAllister* and *Dorothy M. McAllister* their engines, boilers, tackle, equipment, furniture, apparel, etc., and that any person, firm or corporation claiming any interest in said tugs may be cited to appear and answer this Complaint; and

B.     The Court direct that notice of commencement of this suit shall be given by Plaintiff to the owner of the tugs *Beth M. McAllister* and *Dorothy M. McAllister* and any other persons, firms or corporations having any interest herein or having filed any mortgages or notices of lien against the tugs;

C.     That Plaintiff have a judgment entered in its favor against the *in rem* Defendants jointly and severally liable for the amounts owed, plus pre-judgment interest, attorney's fees and taxable costs of this action; and

D.     Plaintiff be awarded such other and further relief as the Court deems just and proper.

Signed this 26th day of March, 2021.

**FOREMAN FRIEDMAN, PA, 2 South Biscayne Boulevard, Miami, FL 33131 Tel: 305-358-6555 / Fax: 305-374-9077**

Respectfully submitted,

By: */s/ Alberto Castañer*
  Alberto Castañer
  Castañer & Cía P.S.C.
  MAI Center, 771 Calle 1,
  Ste 204, San Juan, PR 00920
  Tel: 787-707-0802
  Alberto@castanerlaw.com

By: */s/ Paul Bagley*
  Jeffrey E. Foreman, Esq. (FBN 240310)
  jforeman@fflegal.com
  Darren W. Friedman, Esq. (FBN 146765)
  dfriedman@fflegal.com
  Catherine J. MacIvor (FBN 932711)
  cmacivor@fflegal.com
  Paul Bagley, Esq. (FBN 94211)
  pbagley@fflegal.com
  FOREMAN FRIEDMAN, PA
  One Biscayne Tower, Suite 2300
  2 South Biscayne Boulevard
  Miami, FL 33131
  Tel: 305-358-6555
  *Counsel for NCL (Bahamas) Ltd.*

## <u>VERIFICATION</u>

I declare under penalty of perjury that the foregoing is true and correct.

Executed March 26, 2021

Jeffrey Anderson

Jeffrey Anderson

1